IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **HAMAD MLAIH** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | Civil Action No.  3:26-CV-00577-O |
| | § | |
| **KRISTI NOEM, ET AL,** | § | |
| | § | |
| **Respondents.** | § | |

**ORDER**

Before the Court are Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1); Petitioner's Motion for Temporary Restraining Order (ECF No. 6); Respondent's (the "Government") Response (ECF No. 8); and Petitioner's Reply (ECF No. 10). After considering the briefing and relevant case law, the Court determines that Petitioner's Petition for Writ of Habeas Corpus and Motion for Temporary Restraining Order are both **DENIED**.

**I.      BACKGROUND**[1]

**A.  Factual Background**

Petitioner is a Syrian national who illegally entered the United States on December 29, 2021.[2] On January 28, 2025, Petitioner was granted Temporary Protected Status ("TPS"), under 8 U.S.C. § 1254a. Petitioner's TPS was valid from April 1, 2024, to September 30, 2025. On February 6, 2026, Petitioner was taken into custody and transferred to Prairieland Detention Facility, where he remains detained. This action followed.

---

[1] The undisputed facts are taken from Petitioner's Petition (ECF No.1).
[2] App. Supp. Resp. (Declaration of Aaron Nation) 003, ECF No. 9.

### B.  Legal Background

In 2012, the Secretary of Homeland Security (the "Secretary") designated Syria for TPS due to "extraordinary and temporary conditions in Syria" resulting from "a brutal crackdown" by former Syrian President Bashar al-Assad. *Designation of Syrian Arab Republic for Temporary Protected Status*, 77 Fed. Reg. 19,026, 19,027 (Mar. 29, 2012). On September 19, 2025, the Secretary announced her decision to terminate Syria's TPS designation, and the Department of Homeland Security ("DHS") published the termination notice on September 22, 2025, with an effective termination date of November 21, 2025, at 11:59 p.m. *DHS, Termination of the Designation of Syria for Temporary Protected Status*, 90 Fed. Reg. 45,398 (Sept. 22, 2025).

In response, Syrian TPS holders and advocacy groups filed suit in the Southern District of New York, challenging the termination as a violation of the Administrative Procedure Act (APA) and the Fifth Amendment. On November 19, 2025, the district court granted in part those plaintiffs' motion for preliminary relief in a bench ruling and ordered that the DHS's termination of Syria's TPS designation be postponed pending further order, pursuant to 5 U.S.C. § 705. *Dahlia Doe v. Noem*, No. 1:25-cv-8686, 2025 WL 4477179 (S.D.N.Y. Nov. 19, 2025), *cert. granted before judgment*, No. 25-1083, 2026 WL 731088 (Mar. 16, 2026).

DHS appealed the district court's § 705 postponement order to the United States Court of Appeals for the Second Circuit. On February 17, 2026, the Second Circuit issued a three-page per curiam order summarily denying the Government's motion and leaving the order postponing the termination of Syria's TPS designation in place while the litigation proceeds. *See Dahlia Doe v. Noem*, No. 25-2995, 2026 WL 544631 (2d Cir. Feb. 17, 2026). On March 16, 2026, the Supreme Court granted the Government's petition for a writ of certiorari before judgment. *Noem v. Doe*, No. 25-1083, 2026 WL 731088 (Mar. 16, 2026).

Petitioner now alleges that his continued detention violates the TPS statute, 8 U.S.C. § 1254a, and the Fifth Amendment's Due Process Clause.[3]

## II.    LEGAL STANDARD

### A.  Habeas Corpus

A person held "in custody in violation of the Constitution or laws or treaties of the United States" can seek relief under a writ of habeas corpus. 28 U.S.C. § 2241(c)(3). "[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).  Habeas exists only "to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976).

### B.  Temporary Restraining Order

Rule 65 of the Federal Rules of Civil Procedure governs injunctions and restraining orders. A temporary restraining order is "simply a highly accelerated and temporary form of preliminary injunctive relief, which requires that the party seeking such relief establish the same four elements for obtaining a preliminary injunction." *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 644–45 (N.D. Tex. 2021) (citation modified). A court may issue a Temporary Restraining Order if the movant demonstrates: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in its favor; and (4) that the issuance of the preliminary injunction will not disserve the public interest. *Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). As the movant, it is the party seeking relief who bears the burden of proving all four elements of the requested injunctive relief. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). Temporary restraining orders are

---

[3] Pet. ¶¶ 36–42, ECF No. 1.

"extraordinary relief and rarely issued." *Albright v. City of New Orleans*, 46 F. Supp. 2d 523, 532 (E.D. La. 1999). The decision to grant or deny injunctive relief is committed to a district court's discretion. *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985).

### III. ANLYSIS

#### A. The SDNY's Stay Order

Petitioner argues that the stay order issued in *Dahlia Doe* renders the Secretary's termination of Syria's TPS status inoperative pending judicial review and therefore Petitioner's TPS status remains valid.[4] The Government responds that the ruling of a "New York district court—or even the Second Circuit— is not binding on this Court."[5] The Court agrees with the Government.

Under § 705 of the APA, "the reviewing court" may "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve the status or rights pending conclusion of the review proceedings" to "the extent necessary to prevent irreparable injury." 5 U.S.C. § 705; *see also, e.g.*, *Texas v. EPA*, 829 F.3d 405, 435 (5th Cir. 2016) ("We have the power to stay the agency's action 'to the extent necessary to prevent irreparable injury.'" (quoting § 705)). The Fifth Circuit has interpreted this provision of the APA as akin to a preliminary injunction. *See Wages & White Lion Invs., L.L.C. v. United States FDA*, 16 F.4th 1130, 1135 (5th Cir. 2021) (citing *Nken v. Holder*, 556 U.S. 418, 426 (2009)). Petitioner points to no authority that suggests a stay pursuant to § 705 of the APA should be treated differently than the grant of a preliminary injunction.

Despite Petitioner's assertions to the contrary, a preliminary injunction from a New York district court, like other decisions from foreign circuits, are not binding on this Court. *See Camreta*

---

[4] Pet. ¶¶ 33–35, ECF No. 1; Reply 4–9, ECF No. 10.
[5] Resp. 3, ECF No. 8.

*v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (citing 18 J. Moore et al., Moore's Federal Practice § 134.02[1][d], p. 134–26 (3d ed.2011)); *see also Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) ("Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior resolution of those claims does not bar reconsideration by this Court of similar contentions. The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another. Where a second judge believes that a different result may obtain, independent analysis is appropriate." (citation, footnote, and quotation marks omitted)).[6]

Furthermore, Petitioner has made no attempt to provide the Court with an analysis of the merits of the stay. Instead, Petitioner refers this Court to a one-page order from another district court which in turn refers to the SDNY court's ruling on the record. *See Dahlia Doe*, 2025 WL 4477179, at *1. Petitioners repetition of the fact that the district court's stay was affirmed on appeal does nothing. The Second Circuit affirmed the district court's ruling only because it held that the Government had failed to meet its burden on appeal. *See Dahlia Doe*, 2026 WL 544631, at *1.[7] Petitioner has not once engaged in an analysis of the preliminary injunction factors that warrant a

---

[6] To the extent Petitioner argues that the operative effect of the district court's order in *Dahlia Doe* is not precedential but rather acts to restrain the federal government, the Court agrees. Reply 8–9, ECF No. 10. But that fact constrains the executive branch and not this Court's ability to conduct an independent analysis. The appropriate remedy is for the *Dahlia Doe* court to enforce its orders, not for this Court to be bound. Nor is it this Court's obligation to enforce the *Dahlia Doe* court's injunction. *Stiller v. Hardman*, 324 F.2d 626, 628 (2d Cir. 1963) ("Violation of an injunctive order *is cognizable in the court which issued the injunction*." (emphasis added)).

[7] The Second Court of Appeals addressed the judicial-review bar in 8 U.S.C. 1254a(b)(5)(A) in one sentence, concluding that it "does not bar judicial review of the Secretary's compliance with that statute's procedural requirements" because of the presumption favoring judicial review and the Supreme Court's decision in *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991). *Dahlia Doe*, 2026 WL 544631, at *1.

stay of the Secretary's determination to terminate TPS status for Syria. Nor has Petitioner given any reason for the Court to think that this case is distinct from *Noem v. NTPSA*—a materially similar case—where the Supreme Court has twice granted a stay of the lower court's order. *See* 145 S. Ct. 2728 (2025); 146 S. Ct. 23 (2025). Accordingly, the Court finds it appropriate to conduct an independent analysis.

### B. The Secretary's Termination of Syria's TPS Status

The dispositive question underlying the Petition in this case is whether the Secretary validly terminated Syria's TPS designation. The TPS statute unambiguously precludes judicial review in this case. "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A). The text of Section 1254a(b)(5)(A) is broad. Congress prefaced "determination" with the term "any." 8 U.S.C. 1254a(b)(5)(A). As the Supreme Court "has repeatedly explained, the word any has an expansive meaning." *Patel v. Garland*, 596 U.S. 328, 338 (2022) (citation and internal quotation marks omitted). And when Congress has stripped a court of jurisdiction "'in respect to'" particular claims, the Supreme Court has accordingly construed it as a "broad prohibition." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 312 (2011) (citation omitted). The plain text of the statue gives little leeway for courts to review terminations of TPS status, as such determinations fall squarely within the purview of the political branches. *See Munaf v. Geren*, 553 U.S. 674, 700–01 (2008) ("[I]t is for the political branches, not the judiciary, to assess practices in foreign countries and to determine national policy in light of those assessments.").

Supporting this reading of the statue is the Supreme Court's longstanding recognition that immigration policy is "vitally and intricately interwoven with contemporaneous policies in regard

to the conduct of foreign relations" that are "exclusively entrusted to the political branches of government. . . ." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952). The Executive Branch had long exercised inherent authority to afford temporary immigration status based on its assessment of conditions in foreign states, even before there was any specific statutory authority for such relief. *See Hotel & Rest. Emps. Union, Loc. 25 v. Smith*, 846 F.2d 1499, 1501, 1510 (D.C. Cir. 1988) (discussing the Executive Branch's discretionary power to grant Extended Voluntary Departure status, independent of statutory powers like asylum). That authority included the discretion "not to extend [protected] status" to a particular class of aliens, and the exercise of such discretion was "unreviewable" by courts. *Id.* at 1510.

Against this backdrop and in light of Petitioner's failure to make any argument to the contrary, the Court is compelled to conclude that "the TPS statute precludes review of non-constitutional claims that fundamentally attack the Secretary's specific TPS determinations, as well as the substance of her discretionary analysis in reaching those determinations." *Ramos v. Wolf*, 975 F.3d 872, 891 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023). Because the termination of Syria's TPS status is not judicially reviewable, neither is the termination of Petitioner's TPS status. Accordingly, the Court finds that that Petitioner's TPS status has expired in accordance with the Secretary's determination effective September 30, 2025. *DHS, Termination of Designation of Syria for Temporary Protected Status*, 90 Fed. Reg. 45398 (Sept. 25, 2025).

### C. Petitioner's Due Process Claim

Petitioner brings a claim for violations of his rights under the Due Process Clause of the Fifth Amendment.[8] Petitioner argues that "[b]ecause the termination of Syria's TPS designation

---

[8] Pet. ¶¶ 41–42, ECF No. 1.

has been judicially postponed and TPS-related protections remain operative, the Government presently lacks lawful authority to remove Petitioner."[9] But for the reasons stated above, the Court finds that the Government does have lawful authority to remove Petitioner because Petitioner's TPS status has expired.

As an alien who has not been admitted or paroled, Petitioner is subject to mandatory detention without bond pending the resolution of removal proceedings. It is undisputed that Petitioner was never "admitted" to the United States, for purposes of § 1225(a)(2). Therefore, as an "applicant for admission" who "is not clearly and beyond a doubt entitled to be admitted," Petitioner "shall be detained" under § 1225(b)(2)(A), and as such, is not entitled to a bond hearing. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494. 502–07 (5th Cir. 2026) (holding that aliens that were not admitted are applicants for admissions and subject to mandatory detention without bond under § 1225). Accordingly, Petitioner's due process rights are not offended by being detained pending removal proceedings. *Zuniga v. Lyons*, No. 1:25-CV-221-H, 2025 WL 3755126, at *8 (N.D. Tex. Dec. 29, 2025).

### D. Petitioner's Temporary Restraining Order and Preliminary Injunction

For Petitioner to obtain injunctive relief he must show a substantial likelihood of success on the merits of his habeas claims. *Daniels Health Servs.*, 710 F.3d at 582. Because Petitioner has not demonstrated a substantial likelihood of success on the merits of those claims, the Court **DENIES** Petitioner's Motion for Temporary Restraining Order.

### IV. CONCLUSION

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) is **DENIED** and Petitioner's Motion for Temporary Restraining Order (ECF No. 6) is **DENIED**.

---

[9] Reply 9, ECF No. 10.

**SO ORDERED** on this **19th day** of **March, 2026**.

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**